Good morning, Your Honors, and may it please the Court. My name is Keegan Doheny, and I'm from the Office of the Federal Defender. I will be representing the appellant Daniel Hankins today. I will be trying to save two minutes for rebuttal. I would like to focus mainly on the sufficiency of the evidence argument today, but I will start by addressing the Court's memo regarding jurisdiction to hear that first issue regarding the double recovery by the government. We agree that the case cited in Pallotti did hold that a issue not brought before the district would not be able to be brought in front of the circuit court, but as mentioned in our 28J memo, Pallotti hasn't been cited in this Court or, in fact, in any other court in any published opinion. That being said, this Court has heard issues just like this before. They have heard issues for the first time on the second appeal that weren't brought up at the district level. And for that reason, we would just ask that a plain error standard be applied to that first issue. Moving to the bigger issue, the sufficiency of the argument – sufficiency of the evidence argument for our second issue involving the Exhibit A and the restitution order itself. I think it really does come down to just looking at the evidence that was provided at the restitution hearing. The government presented two pieces of evidence. They presented Exhibit A, which is the Excel spreadsheet, and then they presented the testimony from Agent DeMaria, who was the agent who created that Excel spreadsheet, to try to lay foundation for what the spreadsheet was. The agent started off by saying that this spreadsheet was all the fraudulent charges brought against Mr. Daniel Hankins. But as her testimony went on, it became clear that it wasn't actually that. The government had two – two hurdles they had to get over here. They had to meet a preponderance of the evidence standard for both proving that these charges on this exhibit were fraudulent, and then they had to prove that these fraudulent charges were connected by some proximate cause to Mr. Daniel Hankins. Our argument is they didn't even meet that first hurdle to prove that they were fraudulent. Ms. DeMaria, as in her testimony, explained that the transactions in the Exhibit A were what were considered flagged. Upon both direct and cross, the issue of what a flagged charge was, was brought out. She said it was any suspicious-looking charge on one of the credit cards used in the Sierra Depot's database of credit cards that they had for their vehicles. She explained that suspicion meant that it was used in some way that wasn't normal, just odd, is the way she wrote – the way she said. It could be anything from it was used at a different gas station to even a different fuel was used in the truck than it should have been. So how many counts did he plead guilty to? So he pled to 49, Your Honor. And how many different cards did he agree that he had used? Are – cards or charges? Charges. So charges, it ends up being over 300 different charges. So he pled to the 40. How many different cards? I believe it was about 31? Oh, different – At least 25. I remember them talking about 25. Well, 20 of the cards were used at the mark right outside the base. Isn't that right? Correct, Your Honor. And those were – and some he pled guilty to and some he didn't plead guilty to? So he pled guilty to the 49 charges, which were actual detailed in the Excel spreadsheet. Those 49 are in the spreadsheet. But then there's additional 275 to 280 charges that he did not plead to. And those are the ones that we have issue with. But some of those that he – you object to were at the same location. Correct. Using the same card? They were – I mean, they were different cards. And in fact, there were nine cards not in those additional 49 counts that are being alleged in these additional 275. So it's a mix of all of them. But our argument is that the government had a preponderance of the evidence standard to meet. And like I said, they first had to show that these charges were fraudulent. During her cross, Agent DeMaria said many of these locations and these charges she never investigated, simply because it was too far away or she just didn't have the time to do it. For most of those, though, weren't there other charges on the same card that there was evidence connecting your client to? So many of the charges included in Exhibit A, as she said, were – she only included them because they had been used previously. So it was a strictly propensity kind of situation, where she said they'd been used once, so therefore every other time this had been used, it must have been him. That was her only evidence. Was there any evidence, though, that anyone else was using these cards improperly? There wasn't. But these cards – it should be clear what the cards were used for. The cards belonged to separate vehicles within the Sierra Army Depot. Looking at what the Sierra Army Depot is, they have hundreds of vehicles on this depot, and they're maintaining them and moving them around. So a flagged charge can appear anytime that that credit card was used outside of normal business hours. So if this vehicle was being used to be transported somewhere and someone were to use it outside business hours or at a different gas station for any reason, it became flagged. Flagged itself didn't mean fraudulent, though. And that is the hurdle that the government had to prove is these flagged issues were actually fraudulent. And that's where the evidence issue becomes, because the agent did not provide – she claimed she had evidence, but she didn't provide any at the restitution hearing. And even for some of them, she claimed she had zero evidence to prove that they were actually fraudulent, just that they had been used in the past fraudulently, but these actual charges were not fraudulent. Well, they didn't – there was no proof that they were not fraudulent, right? You're just saying there wasn't sufficient proof that they were fraudulent? Correct. We're saying there wasn't sufficient evidence to meet the preponderance standard. The courts have held that you still have to have reliable, sufficient evidence to meet that preponderance standard. It isn't on the defense to then negate that. The government has to get to the preponderance level before. And that's just proven that they were fraudulent. And then there's the whole – the hurdle of getting to where they connected to Mr. Daniel Hankins himself. But I think the first hurdle is the one that hasn't even been met here. But we don't reweigh that on appeal. We don't – we don't reweigh the evidence on appeal. Correct. So under a clear error standard, what's your argument that there was – the finding was clearly erroneous? So under clear error, I'm – this Court has held that just finding of a lack of evidence in the record for the judge's finding can meet clear error if there was no evidence at all to meet that burden. But there was evidence for many, many of the charges. So, I mean, do we strike down the whole thing because maybe one – 1 percent of it could be wrong? There was at least, during the cross-examination, Ms. Linda Allison brought out seven different charges. And then there were additional ones. But what percentage do those seven charges represent of the overall amount? Well, those seven are not all, Your Honor. There was one instance wherein it was the Rockridge, I believe, or one of the instances that pops up multiple times, one of the locations. The agent found one receipt at a casino nearby for one transaction and then, therefore, imputed all the transactions at that location to Mr. Daniel Hankins. So that was the only evidence. And that – and that – I will find it right now. That transaction appears multiple times in the spreadsheet. The Diamond Mountain charges appears multiple times in here. And that, she imputed from that one receipt that she found at a casino nearby this gas station one time. Isn't that circumstantial evidence? Can't the magistrate then rely on those circumstances? He used, did he not, 18 different cards of the 20 – he pledged 18 different cards. He used them at these similar locations. Isn't that circumstantial evidence? He pled to using them in those 49 times. And he confessed to those 49 times. These additional ones, though, as it can be circumstantial, still won't meet the burden of proof of, I mean, by a preponderance of the evidence. There still has to be sufficient, reliable evidence to meet that standard. Just using this propensity argument wouldn't meet the – the beyond – I mean, by a preponderance of the evidence standard. I – Would you like to reserve? Yes, Your Honor. Thank you. Good morning, Your Honor. Justin Lee for the United States. May it please the Court. There was no clear error in this case where the Court relied on the defendant's admission to law enforcement that his fraud involved between $15,000 and $18,000 in loss, and there was evidence presented to the Court that corroborated that. The Court considered Exhibit A, which was a spreadsheet prepared by the United States, as well as holding an evidentiary hearing with sworn testimony. The Court ordered and considered supplemental briefing, and twice gave the parties an opportunity to argue before the Court regarding restitution. This was not clear error. With respect to Hankins's argument about the apportionment of restitution, this Court should decline to consider that because it was not raised at the District Court and was raised for the first time at the Ninth Circuit. That's consistent with the Eleventh Circuit's holding in Pallotti, and also consistent with how this Circuit handles issues that are not raised in an opening brief before the Court. I have some difficulty with Pallotti because law of the case is a – it's a prudential doctrine. It's not – it's not a set of handcuffs. But usually law of the case applies to the court, the single court in which the case is in front of, not a – not the appellate court. So I have some difficulty applying the law of the case doctrine in this context. That's correct, Your Honor, that law of the case is generally the same consideration at the same level. However, law of the case would allow for consideration of the argument on a discretionary basement under the waiver doctrine. And that would be consistent with how this Court handles law of the case and also how this Court considers an argument that's waived in an opening briefing. Can you think of another instance in our circuit where we've applied law of the case from the District Court to the appellate court? No, Your Honor. I was not able to find that. I looked at bankruptcy court where that might apply. I don't think it exists. That's correct, Your Honor. I could not find anything that supports that. The Seventh Circuit has taken a different approach. They say it's a – we can – we have jurisdiction to consider it, but it's a plain error review and probably, as you say, it's a discretionary review if we choose to deal with the issue at all. Your Honor, my reading of Pallotti did not suggest that it was jurisdictional and it prohibited the court from reviewing. The court in Pallotti specifically cited to Alano and the waiver standard, suggesting that in the appropriate case, manifest injustice or some other appropriate circumstance where waiver or going through waiver would be appropriate, the court would consider it despite the law of the case doctrine. You would agree, I assume, that if we got to the merits of the case, that joint and several liability applied to this case would mean that you were limited to the total amount of restitution. You could not exceed the amount of restitution ordered by the court. Yes, Your Honor. That's – regardless of whether or not it was ordered joint and several or each defendant was argued and held accountable for the full amount of the loss. What's so odd about this issue is it seems like both sides agree on that. So there's this whole discussion about whether it's jurisdictional or plain error and then a whole discussion about how it was apportioned. But ultimately, it seems like both sides agree that their client cannot be responsible for money that the son paid. Is that right? That's correct. The court held in Stanley that there cannot be double recovery by a victim or a windfall for the victim. So it seems that you wouldn't object. Do you have any reason to object to a disposition from us that clarifies that there can't be more recovery than the total amount that was lost? There would be no objection, Your Honor, but there's no basis for that because there's no error by the magistrate judge in the first instance. So there's no reason for this Court to correct that. So is there any problem with us saying there's no error because the background law is that you can never have more recovery? That would be fine, Your Honor, and that's consistent with what the Seventh Circuit did in Trigg on plain error analysis. They held that there was no plain error. Notwithstanding that fact, they still modified the order to explicitly state that there could be no double recovery. But again, the government's position is, as a matter of law, there's no double recovery, and therefore it's unnecessary. Is that your position? That's correct, Your Honor. And there's no error here, so there's no reason to disturb that underlying restitution order. Judge Zille, you asked how many cards were used in total. There were a total of 24 cards in Exhibit A. So there's 323 transactions, 24 cards. Of that total, 17 of those cards were in Counts 1 through 49. Those are the substantive counts that the defendant pleaded guilty to. So there were seven cards that were not involved in the substantive counts that were included in Exhibit A. Is it not true that for some of the locations outside of Hurlong that the demaria said that she didn't have any evidence linking the defendant or members of his family to those transactions? What do we do with those transactions? Your Honor, it's correct that the special agent testified that she had not been to every single gas station and did not have direct evidence for each and every one of them. However, as the Court noted, there's circumstantial evidence to support that the defendant was responsible for each and every one of those transactions. He specifically told investigators that he grabbed the same cards over and over again, and he told investigators that the amount of loss was somewhere between $15,000 and $18,000. And Special Agent Demaria testified that for each card included in Exhibit A, there was at least one instance where, through a concurrent personal credit card transaction or video recording evidence, could link Mr. Hankins or a family member to that card. So each one of those cards had previously been used or used at one time by Mr. Hankins or his family, inconsistent with their official use. If there are no further questions, I'll stop here. I think we have your argument in hand.  Thank you, Your Honor. Would you put two minutes on? We'll give you two minutes. Thank you, Your Honors. Just briefly, I'd like to address the first issue of the joint and several liability. We're only asking that the Court amend the order just so that Mr. Hankins, if the time were to come where both parties have paid what they were ordered to pay, which they were both ordered to pay 100 percent of their restitution orders, don't run into some conflict and then have to go and find some kind of remedy to that issue of who gets reimbursed and what happens at that point. We'd ask for the orders to be ---- Why is this issue ripe? I mean, it seems that the son has not paid, so there's not really a problem yet, is there? There's not yet, Your Honor. But looking at the son's restitution order, he is asked to pay 100 percent of that. In fact, the judge laid out a monthly payment plan for him to be paying. So you can see from his order that the judge expected him to be paying this amount. But maybe the judge just expected that one or the other wouldn't, actually, and so there wouldn't be double recovery. Do you deny that it's proper to allow joint and several liability as long as there's no double recovery? Yes, Your Honor. We are asking for it to be just amended to be joint and several. But why should we read it as not already like that? Well, there is the box on the restitution order that hasn't been checked. And as I said, the judge on Jeremy Hinken's restitution order has ordered 100 percent with those monthly payments. But the 100 percent doesn't show that it's not joint and several, right? Like if the box had been checked, I hear you that the box wasn't checked, but if the box were checked, everything else would look the same, wouldn't it? Correct. And we only ask for the amendment just to make things clear for when the time comes that the remedy doesn't become messy. Moving to the second issue quickly, the government and the Court have addressed the circumstantial evidence issue with the sufficiency of the evidence. While it may be there, it has not been provided in front of the Court. The agent at the restitution hearing said she had it, but she did not produce any. She just claimed she had this. I see my time is up, Your Honors, if there's any questions. Thank you, counsel. Thank you both for your arguments today. The case just argued will be submitted for decision.
judges: Thomas, Friedland, Zilly